# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### May 21, 2024 Session

## NICKOLUS L. JOHNSON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Sullivan County**
**No. C63339   William K. Rogers, Judge**

_____

## No. E2021-01393-CCA-R3-PD

_____

Nearly twenty years ago, Petitioner, Nickolus L. Johnson,[1] shot Bristol Police Officer Mark Vance in the face as Officer Vance entered a home responding to a disturbance call, killing the officer. *State v. Johnson*, 401 S.W.3d 1, 8 (Tenn. 2013). A Sullivan County jury convicted Petitioner of first degree murder and sentenced him to death. *Id.* After his conviction and sentence were affirmed on direct appeal, *id.* at 7, Petitioner subsequently sought post-conviction relief. The post-conviction court denied relief after extensive hearings. Petitioner raises numerous arguments on appeal assailing his conviction and sentence based primarily on ineffective assistance of counsel as well as several standalone constitutional claims. After a thorough review of the record, the applicable law, the parties' briefs, and oral arguments, we affirm the post-conviction court's judgment in all respects.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., J., joined. JAMES CURWOOD WITT, JR., J., not participating.[2]

Deborah Y. Drew (on appeal), Deputy Post-Conviction Defender; and Andrew L. Harris and William G. McGlothlin (on appeal and at post-conviction hearing), Assistant Post-Conviction Defenders, Nashville, Tennessee, for the appellant, Nickolus L. Johnson.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General; and Kenneth F. Irvine, Jr., District Attorney General Pro Tempore, for the appellee, State of Tennessee.

---

[1] The indictment spells Petitioner's first name as "Nickolus," but other documents spell it as "Nikolaus." We use in this opinion the spelling in the indictment and intend no disrespect.

[2] Judge Witt sadly passed away on August 17, 2024. The members of the panel acknowledge Judge Witt's many years of service to the State of Tennessee and to this Court. He will be greatly missed by his colleagues.

# OPINION

## Factual and Procedural History

### *Facts*

On November 27, 2004, Petitioner came armed with two guns to the home of Walter Mitchell to threaten him and B.M.,[3] Mr. Mitchell's daughter. *Id.* Petitioner, who was twenty-six years old, and B.M., who was seventeen years old, were engaged in a sexual relationship, and B.M. was pregnant with Petitioner's child. *Id.* Petitioner insisted that B.M. abort their unborn child, but she refused. *Id.* Afraid that Mr. Mitchell would press statutory rape charges against him, Petitioner threatened to kill him and B.M. *Id.* B.M. contacted Mr. Mitchell and told him there was an armed man at the home threatening her. *Id.* Mr. Mitchell was not home at the time but phoned the police. *Id.*

Meanwhile, Petitioner vowed to shoot the first person who walked in the door, whether a police officer or Mr. Mitchell. *Id.* Petitioner lay in wait in an upstairs bedroom to see who arrived at the home first. *Id.* Petitioner told B.M. he would go to prison for murder, but not for statutory rape. *Id.* Officer Vance entered the home, and Petitioner shot him. *Id.* Officer Vance's service weapon was still holstered; he held only a flashlight as he entered the house. *Id.* Another officer watched as Petitioner shot Officer Vance. *Id.*

A third officer arrived shortly thereafter, and Petitioner exited the house. *Id.* Petitioner told the officers that he "shot the f[***]er." Petitioner said "[he] shot the f[***]ing cop. . . . [He] shot him in the head. [Officer Vance]'s dead. . . ." *Id.* Petitioner began to laugh. *Id.* Petitioner told the officers that he had shot Officer Vance because he did not call the police and did not want the police there. *Id.* Petitioner continued laughing about his shooting Officer Vance as other officers placed him in a patrol vehicle. *Id.*

### *Trial and Direct Appeal*

The Sullivan County Grand Jury indicted Petitioner for one count of first degree premeditated murder and the State filed notice of its intent to seek the death penalty. The State presented the above facts in its case-in-chief in the guilt phase of trial. Petitioner competently waived presentation of mitigation evidence as to mental health during the sentencing phase. *Id.* at 19. A jury convicted Petitioner as charged in the indictment and sentenced him to death. Petitioner appealed to this Court, and we affirmed his conviction

---

[3] We refer to B.M. by her initials because she was a minor when these events occurred.

and sentence. *See State v. Johnson*, No. E2010-00172-CCA-R3-DD, 2012 WL 690218 (Tenn. Crim. App. Mar. 5, 2012), *aff'd*, 401 S.W.3d 1 (Tenn. 2013). Our supreme court likewise affirmed, and the United States Supreme Court denied certiorari. *See Johnson*, 401 S.W.3d 1, *cert. denied*, 571 U.S. 992 (2013).

### *Post-Conviction Proceedings*

Petitioner timely filed a pro se petition for post-conviction relief on March 7, 2014. Petitioner subsequently amended and supplemented his petition at various times through counsel. Evidentiary hearings in this matter took place over several days in summer 2019 and January 2020.

Dr. Siddhartha Nadkarni testified at the post-conviction evidentiary hearing as an expert in neurology, epilepsy, neuropsychiatry, neurophysiology, and traumatic brain injury. Dr. Nadkarni met with Petitioner in 2016 for around two hours and performed a neurological evaluation. Dr. Nadkarni and Petitioner did not discuss the offense or Petitioner's waiver of mental health mitigation evidence.

Dr. Nadkarni also reviewed numerous records of Petitioner's childhood, upbringing, and background. One of those documents was a social history report prepared by the Office of the Post-Conviction Defender. The social history report detailed Petitioner's childhood, upbringing, and background, as well as the histories of family members. Dr. Nadkarni learned from the social history report that several members of Petitioner's family suffered from similar ailments and other psychiatric disorders; he testified that such disorders often run in families. Dr. Nadkarni also learned from reviewing Petitioner's medical records that Petitioner had been hospitalized in 1996 for psychiatric reasons. He was diagnosed with psychosis at that time.

Dr. Nadkarni ultimately concluded from his evaluation of Petitioner and his records that Petitioner suffered from temporal lobe epilepsy, frontal lobe syndrome secondary to traumatic brain injuries, and multiple traumatic brain injuries. Dr. Nadkarni was not surprised that Petitioner had never before been diagnosed as Dr. Nadkarni had diagnosed him because such impairments often manifest themselves later in life. Additionally, Petitioner suffered from Wolff-Parkinson-White Syndrome (an abnormality of the heart's electrical function), Chron's disease, and Tourette's Syndrome. Dr. Nadkarni was also unsurprised that all of Petitioner's previous brain testing yielded normal results because the diagnoses he gave Petitioner would not necessarily have manifested themselves during the previous testing.

Dr. Nadkarni expressed his opinion that Petitioner was in a state of "nonconvulsive epilepsy" on the day of the shooting based on secondhand reports of Petitioner's behavior

- 3 -

in the months leading up to his shooting Officer Vance. Petitioner's neurological disorders and stressors present on the day of the shooting, acting in concert, resulted in Petitioner, according to Dr. Nadkarni, being in "an altered state where he wasn't in his normal state of mind"; therefore, Petitioner could not exercise the reflection and judgment necessary to form the requisite mental state for first-degree premeditated murder. Dr. Nadkarni conceded on cross-examination, though, that he "could not go [so] far" as to say that Petitioner was incapable of performing "any intentional act" at the time of the offense. He opined that Petitioner was incompetent to waive mental health mitigation evidence during sentencing, and also that Petitioner lacked the capacity to meaningfully consult with counsel and participate in his defense at trial.

Dr. Richard Dudley testified as an expert in psychiatry. He likewise personally evaluated Petitioner and reviewed records pertaining not only to Petitioner but also to his family members. Dr. Dudley could not reach a specific diagnosis for Petitioner but nonetheless concluded that he suffered from a major psychiatric disorder. Dr. Dudley explained that Petitioner's psychiatric impairments, neurological impairments (as described by Dr. Nadkarni), and neuropsychological impairments (as described by Dr. Pamela Auble, who testified later in the hearing) exacerbated one another and thus significantly impaired Petitioner's judgment and decision-making skills.

Dr. Dudley ultimately concluded that Petitioner was unable to conform his behavior to the requirements of the law and could not exercise judgment or reflection on the night he killed Officer Vance. He opined that Petitioner was not competent to stand trial, but conceded on cross-examination that he was "not in a position to . . . professionally disagree" with the opinions of experts who examined Petitioner pretrial and concluded he was competent because Dr. Dudley had not examined Petitioner before trial. Dr. Dudley also concluded that Petitioner was not competent to waive mental health mitigation proof during sentencing.

Kristi Dowden, a paralegal with the Office of the Post-Conviction Defender, collected news media related to Petitioner's case. Ms. Dowden gathered newspaper articles and contracted with News Data Service to collect broadcast news coverage and closed captioning regarding Petitioner's case. The media she collected ranged from November 28, 2004 (immediately following the shooting) to April 9, 2007 (the first day of jury selection). Ms. Dowden collected 96 newspaper articles and 320 closed captioning reports from broadcast media in that timeframe. Of those figures, 275 of the closed captioning reports and 93 of the newspaper articles came from the Tri-Cities media market, which includes Sullivan County. Themes discussed in the news coverage included Officer Vance's funeral, Petitioner's confession, and the need for heightened courtroom security during the trial.

Bryan Edelman, a jury consultant, conducted a "venue analysis" of Petitioner's case in connection with the post-conviction proceedings. Dr. Edelman examined the pretrial newsprint media and broadcast coverage about this case as well as the juror questionnaires and the voir dire transcript. Dr. Edelman concluded that the media coverage had created an "undue bias or excitement against [Petitioner]." This bias, according to Dr. Edelman, created a "reasonable likelihood" that Petitioner did not receive a fair trial in Sullivan County. Dr. Edelman opined that a change of venue would have been appropriate to ameliorate these problems. Dr. Edelman further believed that trial counsel's voir dire did not effectively ferret out bias in the venire.

Justin Levinson, a law professor, testified about social science research regarding implicit racial bias and its effects on decision-making in the law. Professor Levinson reviewed the media reports about this case, the video of Petitioner in the police cruiser, the juror questionnaires, the voir dire transcript, and the sentencing hearing transcript. Professor Levinson opined that "a reasonable likelihood exists that bias affected at least one juror's decision-making in the guilt or sentencing phases." He could not, however, specify any individual juror whose decision-making was so compromised.

Dr. Marilyn Miller testified as an expert in crime scene reconstruction and forensic science. Dr. Miller reviewed physical evidence in Petitioner's case as well as statements from law enforcement and prosecution files and crime scene photographs. She also reviewed the Tennessee Bureau of Investigation's ("TBI") and the Bristol Police Department's standard operating procedures for evidence handling and forensic testing.

Dr. Miller took issue with a few areas of the law enforcement investigation in this case. She specifically felt that there was a "lack of crime scene security" because "way too many" first responders had access to the crime scene. According to Dr. Miller, every person on the crime scene log could have "potentially contaminated, altered, [or] changed the evidence at the crime scene[.]" She was especially critical of how law enforcement handled the murder weapon and tested for gunshot residue, but conceded on cross-examination that there were no positive gunshot residue results yielded in this case. She also found it problematic that law enforcement did not take certain photographs and measurements in their attempt to reconstruct the crime.

Dr. Pamela Auble, an expert in neuropsychology, examined Petitioner and reviewed his social and family history. Dr. Auble administered several tests and concluded based on Petitioner's performance that he suffered from an impairment that most severely affected his ability "to deal with complicated situations that required organization and memory." She ultimately diagnosed Petitioner with "a mild neurocognitive disorder." Dr. Auble concluded based on these findings that Petitioner suffered from a mental disease or defect at the time of the offense and that he had an extreme mental or emotional disturbance such

that he could not form "the level of intent that's required for premeditated murder. . . . And, in [Dr. Auble's] opinion, [Petitioner] was in a state of excitement and passion and was unable to engage in reflection and judgment." She clarified on cross-examination, however, that her findings were not that Petitioner "had no capacity to form any intent."

Lead counsel[4] testified that he was appointed to represent Petitioner upon his indictment and that his representation continued through the direct appeal. Lead counsel reached out to a consultant to poll the community about pretrial publicity and filed a motion seeking funds for such polling. The motion, however, was denied. Lead counsel agreed that this case would have been difficult to try in any county in Tennessee because the evidence was overwhelming. Trial counsel consulted with an attorney in Chattanooga who had worked on a similar case and obtained her voir dire questions.

Trial counsel had the potential jurors fill out questionnaires and distilled their answers to a summary sheet for each juror. Lead counsel expected the case to go to the penalty phase, so an important objective of voir dire for him was to select jurors who could consider the mitigation evidence counsel planned to present and to remove jurors who could not or would not consider mitigation. Lead counsel agreed that "the majority of the case in mitigation [he] expected to present in the penalty phase [was] evidence of mental illness."

Trial counsel's strategy during the guilt phase was to convince the jury to convict Petitioner of a lesser offense than first degree premeditated murder, arguing that Petitioner was in a very heated emotional state and therefore did not form premeditation. Lead counsel noted, however, that he and co-counsel "painted a dismal picture" of the guilt phase in their discussions with Petitioner and that Petitioner knew he was likely going to be convicted of first degree premeditated murder because the case's facts were so "challenging."

Co-counsel testified that "the brunt" of his and lead counsel's strategy for the penalty phase was mental health mitigation evidence and that they were "fully prepared" to present that evidence. Lead counsel recalled that Petitioner's waiver of mental health mitigation evidence "totally" surprised him, and the first time he heard Petitioner say he did not want mental health evidence presented was "[r]ight there in the trial." Co-counsel echoed this sentiment. Lead counsel said, "[Petitioner] looked back at his mother, and she shook her head, and he said, 'Don't do it.'" Lead counsel believed Petitioner's waiver was based on "undue influence and domination of his mother" and told the trial court that anyone who would waive such evidence was incompetent. Co-counsel also stated that

_____

[4] Petitioner was represented at trial and on direct appeal by two attorneys. We refer to them collectively as "trial counsel" and individually as "lead counsel" and "co-counsel."

Petitioner's desire to waive mental health mitigation raised concerns about his competency, which he voiced to the trial court. Lead and co-counsel stated that Petitioner was engaged with them throughout jury selection and trial.

Lead counsel recalled that Petitioner's mother had "voiced her concern" to trial counsel "about embarrassing the family with mental health issues." Lead counsel also recalled that he and co-counsel "vigorously" tried to get the mental health evidence before the jury. Numerous records from trial counsel regarding their investigations of Petitioner's mental health and competency evaluations were admitted as exhibits to the post-conviction hearing. Lead counsel testified that he had presented mental health evidence in previous capital cases and that it had to be carefully presented so the jury did not perceive it as "an excuse for the criminal conduct."

As to experts, lead counsel said he did not consult a gunshot residue expert because "[the State] had an eyewitness. It wasn't a question of whether [Petitioner] shot [Officer Vance] or not. . . . [F]rankly it didn't—didn't make a lot of difference to [lead counsel] whether there was gunshot residue or not." Lead counsel agreed that evidence such as fingerprints and the "angles of the shot" "were not where [he] saw this case being defended" and that he would have lost credibility with the jury by focusing on that evidence.

Several of Petitioner's family members and friends testified at the post-conviction evidentiary hearing about his childhood and his behavior leading up to the shooting. One of Petitioner's cousins testified that she was told to come to trial to serve as a character witness but was not interviewed before she testified during the penalty phase. She confirmed that Petitioner did not allow any discussion of mental health testimony. One of Petitioner's friends testified that trial counsel had reached out to him about testifying during the penalty phase and he had refused. Another friend claimed that trial counsel reached out to him before trial to see if he was willing to testify as a character witness; this friend, however, did not explain his absence during the penalty phase of trial.

Petitioner did not testify at the evidentiary hearings.

The post-conviction court denied relief in a written order specifically addressing each ground Petitioner raised. The court found for most of the issues that Petitioner failed to carry his burden of proof, but found other issues waived or previously determined.

Petitioner appeals.

**Analysis**

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A petitioner must prove his factual allegations by clear and convincing evidence. *See id.* § 40-30-110(f). "Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of conclusions drawn from the evidence." *State v. Holder*, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 869, 901 n.3 (Tenn. 1992)). Issues as to the credibility of witnesses, the weight and value to be afforded their testimony, and the factual questions raised by the evidence adduced at the post-conviction hearing are to be resolved by the post-conviction court as the trier of fact. *Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997). The post-conviction court's findings of fact "are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence preponderates against those findings." *Id.* at 578.

"A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented[.]" T.C.A. § 40-30-106(g). Relatedly, "[a] ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing. A full and fair hearing has occurred where the petitioner is afforded the opportunity to call witnesses and otherwise present evidence, regardless of whether the petitioner actually introduced any evidence." *Id.* § (h).

As to ineffective assistance of counsel, Petitioner claims that counsel were ineffective for: (1) failing to secure a change of venue; (2) failing to prevent Petitioner from wearing a shock belt during trial; (3) failing to conduct an adequate voir dire; (4) failing to "rid bias that infected jury selection"; (5) failing to request expert assistance to challenge the physical and forensic evidence; (6) failing to make adequate arguments to suppress Petitioner's statements; (7) failing to investigate, develop, and present evidence of Petitioner's diminished capacity; (8) failing to investigate, develop, and present evidence of Petitioner's incompetency; (9) failing to develop and present mitigating evidence during the penalty phase of trial; (10) failing to challenge the prior-crime-of-violence aggravating circumstance; (11) failing to challenge unconstitutional jury instructions; (12) failing to voir dire the State's expert witnesses regarding their qualifications; (13) failing to object to the prosecutor's argument that Petitioner's statements amounted to a confession; (14) failing to challenge the State's proof at sentencing and "educate the jury"; (15) failing to argue that the State violated Petitioner's rights because the aggravating factor making him eligible for a death sentence was neither in the indictment nor returned by the grand jury; (16) failing to present evidence of racial stereotypes and implicit bias during sentencing;

(17) failing to object to the "paucity of resources available to the defense in capital cases"; (18) failing to argue the economic cost of the death penalty during the penalty phase of trial; (19) failing to argue that the death penalty is unconstitutional on its face and as applied to Petitioner; (20) failing to argue that Petitioner's death sentence was a violation of international law; and (21) failing to challenge an allegedly improper verdict form on appeal.

As to Petitioner's standalone claims, he argues that: (1) the trial court violated his constitutional rights by forcing him to wear a shock belt during his trial; (2) prosecutorial misconduct requires reversal; (3) Petitioner's death sentence is invalid because it was based on an unconstitutionally vague aggravating circumstance; (4) Petitioner's death sentence is invalid because courts made factual findings necessary to impose the death penalty; (5) structural error infected Petitioner's trial and requires reversal; (6) Tennessee's proportionality review is flawed; (7) the death penalty in Tennessee is unconstitutional on its face and as applied to Petitioner; and (8) cumulative error invalidates Petitioner's conviction and sentence.

We address each issue in turn.


## I. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee to criminal defendants the right to counsel. These provisions have been interpreted to guarantee the effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). To succeed on a claim of ineffective assistance of counsel, a petitioner must prove (1) deficient performance by counsel, and (2) that counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687; *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996). If a petitioner fails to satisfy either prong, the claim fails. *Strickland*, 466 U.S. at 687.

As to deficiency, we begin with a "strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions." *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citing *Strickland*, 466 U.S. at 687). A petitioner bears the burden of overcoming this presumption. *Kendrick*, 454 S.W.3d at 458. Counsel's performance is deficient if it "f[alls] below an objective standard of reasonableness," *Strickland*, 466 U.S. at 688; stated differently, if "the advice given, or the services rendered by the attorney, are [outside] the range of competence demanded of attorneys in criminal cases." *Baxter*, 523 S.W.2d at 936. This standard does not require perfect representation, but constitutionally adequate representation. *Denton v.*

*State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). We make every effort to avoid Monday-morning quarterbacking and to eliminate hindsight's distorting effects; we therefore strive to "'reconstruct the circumstances of counsel's challenged conduct, and . . . evaluate the conduct from counsel's perspective at the time.'" *Felts v. State*, 354 S.W.3d 266, 277 (Tenn. 2011) (quoting *Strickland*, 466 U.S. at 689). That a particular strategy or tactic was unsuccessful is insufficient standing alone to establish deficiency. *Felts*, 354 S.W.3d at 277 (citing *Goad*, 938 S.W.2d at 369).

A petitioner establishes prejudice if he shows that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006). "It is not enough for the petitioner to show that the errors had some conceivable effect on the outcome of the proceeding"—a petitioner must prove that the alleged deficiencies "actually had an adverse effect on the defense." *Strickland*, 466 U.S. at 693.

We measure appellate counsel's performance with the same rod. *See Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004). Appellate counsel is not constitutionally required to argue every possible issue: indeed, "'experienced advocates have long emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue, if possible, or at most a few key issues.'" *Id.* at 887 (quoting *Cooper v. State*, 849 S.W.2d 744, 747 (Tenn. 1993)). Decisions regarding which issues to raise on appeal are within the professional judgment and discretion of appellate counsel; we therefore give these decisions considerable deference. *Carpenter*, 126 S.W.3d at 887.

A claim of ineffective assistance of counsel is a mixed question of law and fact. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). We review the post-conviction court's findings of fact de novo with a presumption that those findings are correct unless the evidence preponderates against them. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). We review the post-conviction court's conclusions of law de novo. *Id.*

Against this backdrop we review Petitioner's allegations of ineffective assistance.

*A. Failure to Secure Change of Venue*

Petitioner contends that trial counsel were ineffective for failing to move for a change of venue until the final day of jury selection. The State argues that trial counsel were not ineffective in this regard.

We must first consider the proper standard of review for this issue. *See State v. Enix*, 653 S.W.3d 692, 698 (Tenn. 2022) ("[T]he first question for a reviewing court on any issue is 'what is the appropriate standard of review?'"). Petitioner insists that we apply a presumed-prejudice standard of review. He cites to cases such as *Rideau v. Louisiana*, 373 U.S. 723, 726-27 (1963) (reversing conviction after pretrial media coverage led to "kangaroo court proceedings"), *Estes v. Texas*, 381 U.S. 532, 536-38 (1965) (applying presumed-prejudice standard where the community was "bombard[ed]" with the proceedings and the media atmosphere denied the defendant the "judicial serenity and calm to which [he] was entitled"), and *Sheppard v. Maxwell*, 384 U.S. 333, 354-58 (1966) (applying presumed-prejudice standard where there was a "carnival atmosphere at trial," though "months [of] virulent publicity about [the defendant] and the murder" did not deny due process), in an attempt to shore up his argument. Petitioner also cites *Quintero v. Bell*, 256 F.3d 409, 415 (6th Cir. 2011), in which the Sixth Circuit presumed prejudice because "trial counsel's de facto acceptance of the jury composition" and "utter failure . . . to contest [jurors'] presence undermined the entire trial process, such that it lost 'its character as a confrontation between adversaries.'" (quoting *United States v. Cronic*, 466 U.S. 648, 656-57 (1984)).

We, however, have specifically rejected this claim in the past. *See Davidson v. State*, No. E2019-00541-CCA-R3-PD, 2021 WL 3672797, at *41 (Tenn. Crim. App. Aug. 19, 2021) ("[T]he Petitioner is challenging his attorneys' representation in the post-conviction context. This is not a direct review of his convictions and sentences, as was the case in *Skilling* [*v. United States*, 561 U.S. 358, 381 (2010)]. The *Strickland* standard of review applies. . . . Thus, the Petitioner must demonstrate that actual prejudice resulted from counsel's decision."), *perm. app. denied* (Tenn. Dec. 8, 2021). And, in any event, a comparison of the pretrial publicity and courtroom atmosphere in Petitioner's case and the cases on which he relies simply does not hold water. Trial counsel here subjected the State's case to adversarial testing. Counsel challenged many potential jurors for cause, leading to many successful removals. This case, though certainly difficult because of the horrific facts, was certainly a "confrontation between adversaries"—it was no kangaroo court. We see no reason to chart a new course here and therefore forge ahead with the *Strickland* standard of review.

Lead counsel testified at the post-conviction evidentiary hearing that "wherever this case was tried, in Sullivan County or any other county," the proof was overwhelming against Petitioner. Lead counsel believed that if he moved for a change of venue, the case would be moved to Johnson County, which in his experience was "less inclined to come back with 'not guilty' verdicts than anyplace else." Trial counsel did not see a benefit in moving for a change of venue until he discovered the precise extent of the media's effects on the potential jurors during voir dire. This was a reasonable strategic decision, and trial counsel were not deficient in this regard.

Petitioner also has not established prejudice. A change of venue may be granted when "undue excitement" would likely preclude a fair trial, *see* Tenn. R. Crim. P. 21(a), but pretrial publicity, even "pervasive, adverse publicity[,]" does not automatically guarantee an unfair trial, *see Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 554 (1976). Jurors "can have knowledge of the facts surrounding the crime and still be qualified to sit on the jury." *State v. Crenshaw*, 64 S.W.3d 374, 386 (Tenn. Crim. App. 2001). Our determination is ultimately "whether the jurors who actually sat and rendered verdicts were prejudiced by pretrial publicity." *Id.* This Court found on direct appeal that "the record does not disclose . . . that any of the jurors who actually sat and rendered verdicts in this case were prejudiced against [Petitioner] as a result of the pretrial publicity given to the crime by the media." *Johnson*, 2012 WL 690218, at *49. The post-conviction court found that Petitioner had not established deficiency, and the evidence does not preponderate against its finding. Petitioner is therefore not entitled to relief on this issue.

As an extraneous matter, Petitioner challenges trial counsel's failure to demonstrate a particularized need to obtain funding for a publicity expert. Even assuming for the sake of argument that counsel did not demonstrate a particularized need for such an expert, the trial court's denial of counsel's motion was grounded not in failure to show a need for the expert, but rather in its belief that individual voir dire was an adequate measure to eliminate publicity concerns. The post-conviction court found that Petitioner had not established prejudice on this issue. The record does not preponderate against its finding. Petitioner is not entitled to relief.

## B. Failure to Challenge Shock Belt

Petitioner argues that trial counsel were ineffective for failing to prevent his wearing a shock belt during his trial. The State argues that the post-conviction court properly denied relief on this issue because trial counsel were not deficient.

Petitioner acknowledges that trial counsel objected to the shock belt's use at trial. He claims, however, that trial counsel should have argued their objection differently. The post-conviction court found that trial counsel "zealously, yet unsuccessfully, argued against its use at trial." Trial counsel objected twice, brought Petitioner's heart condition to the trial court's attention, suggested alternative security methods, and noted Petitioner's good behavior in court.

The trial court reviewed Petitioner's extensive jail disciplinary records, which were of great concern to it. The trial court specifically noted incidents in which Petitioner had threatened to kill officers, threatened to rape an officer's wife and children, thrown feces and urine at officers and other inmates, and was otherwise unruly and disobedient.

Contained within those records were notes from one of Petitioner's doctor appointments where his cardiologist told him the shock belt would not pose a problem to his health despite his heart condition, on which the trial court relied in part in denying Petitioner's objection.

Petitioner claims that counsel should have asked for a continuance to obtain medical testimony and called witnesses to show that officers falsified their reports in the disciplinary records. However, trial counsel and the trial court already had the benefit of a medical opinion and a study showing that the shock belt did not affect heart rhythm. Petitioner did not call any witnesses at the post-conviction evidentiary hearing to establish that the records were falsified. We decline to speculate on this matter. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).

The post-conviction court found that Petitioner did not carry his burden of proof on either *Strickland* prong as to this issue. We agree and conclude that the evidence does not preponderate against the post-conviction court's findings. Petitioner is not entitled to relief.

### C. Inadequate Voir Dire

Petitioner argues that trial counsel were ineffective for failing to conduct an adequate voir dire in several respects. Both the federal and state constitutions guarantee the right to an impartial jury. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. "'The ultimate goal of voir dire is to ensure that jurors are competent, unbiased and impartial.'" *Smith v. State*, 357 S.W.3d 322, 347 (Tenn. 2011) (quoting *State v. Hugueley*, 185 S.W.3d 356, 390 (Tenn. 2006) (appendix)). "'[A]ctions during voir dire are considered to be matters of trial strategy," so lawyers are "'accorded particular deference when conducting voir dire.'" *Rogers v. State*, No. M2010-01987-CCA-R3-PD, 2012 WL 3776675, at *36 (Tenn. Crim. App. Aug. 30, 2012) (quoting *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001)), *perm. app. denied* (Tenn. Dec. 11, 2012). A petitioner "is required to prove that [a] deficiency resulted in having a juror seated who was actually biased" to establish prejudice. *Smith*, 357 S.W.3d at 348.

Petitioner first alleges that counsel were deficient for failing to properly utilize the jury questionnaire to probe jurors' beliefs about race and their knowledge of the case. Trial counsel specifically told the jurors during voir dire that "[c]onsiderations of race have no place in this trial . . . as to an issue of guilt or innocence, nor as to the issue of punishment," and obtained a pledge from each juror that race would play no part in their decision, nor would they tolerate it from any other juror. Petitioner complains, without supporting evidence, that "the racial history in Sullivan County" mandated that trial counsel question about racial bias. What is more, Petitioner did not question trial counsel at the evidentiary

hearing as to why this topic was not included in the questionnaire. He cursorily claims that because counsel did not include such questions in the questionnaire, "a reasonable probability exists that one of the jurors on that panel would have voted not to convict [Petitioner] of first degree murder or would have voted for death." This is not sufficient to show that any one juror was actually biased against Petitioner. Additionally, Petitioner does not explain how the juror questionnaire should have handled pretrial publicity concerns. The record does not preponderate against the post-conviction court's finding that Petitioner established neither deficiency nor prejudice. He is not entitled to relief.

Petitioner next complains that trial counsel failed to properly inquire into the jurors' case knowledge. Counsel extensively questioned the potential jurors about their case knowledge and individually questioned each juror who said they thought they knew something about the case. Counsel successfully sought excusal of several jurors who knew too much or had predetermined the case's outcome. Petitioner identifies no questions counsel should have asked the potential jurors and did not ask counsel about this topic at the evidentiary hearing. The record does not preponderate against the post-conviction court's findings that Petitioner did not establish deficiency or prejudice.

Petitioner asserts that trial counsel were ineffective for failing to properly life qualify and rehabilitate jurors. He claims that counsel should have questioned the prospective jurors on their beliefs about the death penalty and whether they could consider mitigation evidence. The record belies this claim. Counsel (and the trial court) questioned each juror about their views on the death penalty and whether they would automatically impose the death penalty if Petitioner were convicted of first degree premeditated murder. Petitioner has not established that any juror seated in his case would automatically impose the death penalty, so he has not established prejudice. As to his complaints about rehabilitating certain jurors, trial counsel extensively attempted to rehabilitate the five jurors of whom he complains. Four of those prospective jurors stated that they could not impose the death penalty, and the fifth believed that Petitioner was guilty and the evidence would have to demonstrate otherwise. These potential jurors were properly excused for cause. *See State v. Miller*, 638 S.W.3d 136, 150 (Tenn. 2021) (concluding the test for whether to excuse a juror for cause is "whether the potential juror's views would 'prevent or substantially impair the performance of his duties as juror in accordance with his instructions and his oath.'") (quoting *Wainwright v. Witt*, 469 U.S. 412, 424 (1985)). The post-conviction court found that Petitioner had not carried his burden of establishing deficiency or prejudice on this issue because he did not question counsel about the issue at the evidentiary hearing. The record does not preponderate against this finding, so Petitioner is not entitled to relief.

Petitioner claims that trial counsel were ineffective for failing to expose the prospective jurors to "facts not in dispute" about the offense. He does not explain to what

- 14 -

facts trial counsel should have exposed the jury or how his trial would have come out differently had counsel so done. He did not question counsel on this topic at the post-conviction evidentiary hearing. The record does not preponderate against the post-conviction court's findings that Petitioner demonstrated neither deficiency nor prejudice and he is not entitled to relief.

Petitioner next argues that trial counsel were ineffective for failing to adequately question the prospective jurors about mitigation and their attitudes toward mental illness and mental state defenses. As to mitigation evidence, he argues that trial counsel did not "provide jurors clarity or guidance about mitigation evidence generally[.]" He concedes that trial counsel extensively described mitigation evidence and used hypothetical examples; he argues, however, that trial counsel should have used different examples. That Petitioner might employ a different explanation now does not mean trial counsel was deficient. As to jurors' attitudes toward mental illness and mental state defenses, Petitioner did not question trial counsel on this, so, as the post-conviction court noted, he cannot overcome the presumption that their tactics were strategic. *See Rogers*, 2012 WL 6776675, at *36. The record does not preponderate against the post-conviction court's findings that Petitioner established neither deficiency nor prejudice.

Petitioner claims that trial counsel were ineffective for failing to question jurors "in a manner that would have revealed bias" on several issues. However, as the State points out, he did not question counsel on this issue, does not identify any specific questions trial counsel should have asked, and presented no evidence that such questioning would have revealed any bias. To the extent he argues that we should presume racial prejudice, he is wrong. Neither *State v. Bobo*, 814 S.W.2d 353, 358 (Tenn. 1991), nor *Gray v. Mississippi*, 481 U.S. 648, 668 (1987), the cases Petitioner cites on this point, stand for such a proposition—they hold only that harmless error analysis is inappropriate on direct appeal where a criminal defendant shows an error affecting the constitutional right to trial by jury. The record does not preponderate against the post-conviction court's finding that Petitioner did not establish deficiency, so he is not entitled to relief.

Petitioner also contends that counsel were ineffective for failing to object to the State's extracting a "death pledge" from the prospective jurors and failing to excuse those jurors for cause. Petitioner misrepresents the record on this issue. The State only asked the jurors to affirm whether they "could" or would "be able to" vote to impose the death penalty if they convicted Petitioner of first degree premeditated murder and found there were no mitigating factors that outweighed the aggravating factors. This was not a "death pledge" and was, in fact, completely proper. *See Miller*, 638 S.W.3d at 149. Counsel cannot be deficient for failing to object to proper questioning by the State. The record does not preponderate against the post-conviction court's finding that Petitioner did not demonstrate deficiency on this issue.

- 15 -

Petitioner next complains that counsel were ineffective for failing to challenge for cause or strike "automatic death penalty" jurors and for failing to raise this issue on appeal. He does not point in the record to where the jurors of whom he complains expressed their opinion that they would automatically vote for the death penalty, so this claim is waived. *See* Tenn. R. Ct. Crim. App. 10(b) ("Issues which are not supported by . . . appropriate references to the record *will be treated as waived in this court*.") (emphasis added).

Petitioner argues that trial counsel were ineffective for failing to challenge for cause or strike two jurors who were "unduly tainted by prejudicial pretrial publicity." One of the jurors stated during voir dire she had heard that Petitioner "admitted that he had done it to the police." The other recalled she had heard something about a confession and knew the victim was a police officer. Jurors "can have knowledge of the facts surrounding the crime and still be qualified to sit on the jury." *Crenshaw*, 64 S.W.3d at 386. Our determination is ultimately "whether the jurors who actually sat and rendered verdicts were prejudiced by pretrial publicity." *Id.* As we noted on direct appeal, "the record does not disclose . . . that any of the jurors who actually sat and rendered verdicts in this case were prejudiced against [Petitioner] as a result of the pretrial publicity given to the crime by the media." *Johnson*, 2012 WL 690218, at \*49. The post-conviction court noted that Petitioner did not ask counsel about these jurors at the evidentiary hearing. The post-conviction court therefore found that Petitioner had not overcome the presumption that counsel's performance was adequate on this point and consequently he had not established deficiency. The record does not preponderate against this finding.

Petitioner claims that appellate counsel were ineffective for failing to raise as an issue "the trial court's refusal to excuse a biased juror for cause." Petitioner, however, did not ask counsel at the post-conviction hearing why they did not raise this issue. He therefore cannot overcome the presumption that this was a strategic decision and, as the post-conviction court found, did not establish deficiency. *See Kendrick*, 454 S.W.3d at 458. The record does not preponderate against this finding. Petitioner is not entitled to relief on this issue.

Petitioner alleges that trial counsel were ineffective for failing to object to the trial court's "fixed response questions" that "tipped off automatic-death-penalty jurors by allowing them to assess what answers would allow them to potentially become empaneled." He fails to explain how such an objection would have succeeded. The record supports the post-conviction court's finding that Petitioner failed to establish that any juror was actually biased against him, so he cannot establish prejudice and is not entitled to relief.

Petitioner contends that appellate counsel were ineffective for failing to include appropriate citations to the record for "the erroneous excusal of [several] jurors" and failing

to argue that the trial court misapplied *Witherspoon v. Illinois*, 391 U.S. 510 (1968). Petitioner's argument, however, fails on its own terms: he claims that raising these issues "could have affected the appellate courts' determination[.]" This is insufficient to establish prejudice. *See Strickland*, 466 U.S. at 693 ("It is not enough for the petitioner to show that the errors had some conceivable effect on the outcome of the proceeding"—a petitioner must prove that the alleged deficiencies "actually had an adverse effect on the defense."). The post-conviction court found that Petitioner demonstrated neither deficiency nor prejudice on this point, and the record does not preponderate against its findings. Petitioner is not entitled to relief.

## D. Failure to Eliminate Bias in Jury Selection

Petitioner raises several challenges to other aspects of trial counsel's conduct surrounding jury selection. He first argues that counsel were ineffective for failing to argue that the grand jury was not selected from a fair cross-section of the community, and for failing to raise the issue on appeal. Petitioner baselessly claims that "Tennessee Rule[] of Criminal Procedure . . . 6(g) operated in Sullivan County to systemically exclude women and African Americans as forepersons of grand juries" because few women and no blacks have served as a grand jury foreperson in Sullivan County. Petitioner does not explain how such a claim would have resulted in dismissal of the indictment had trial counsel raised it. The post-conviction court found that Petitioner presented no evidence related to the grand jury selection in his case, so he could not carry his burden to establish deficiency or prejudice. The record does not preponderate against these findings. Petitioner is not entitled to relief on this issue.

Petitioner next argues that trial counsel were ineffective for failing to argue that blacks were systematically excluded from the venire. The Sixth Amendment to the United States Constitution protects, as relevant here, the right to "an impartial jury of the State and district wherein the crime shall have been committed." This has been interpreted to mean "that the selection of a petit jury from a representative cross[-]section of the community is an essential component of the Sixth Amendment right to a jury trial." *Taylor v. Louisiana*, 419 U.S. 522, 528 (1975). Therefore, the venire "must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." *Id.* at 538. Defendants nonetheless "are not entitled to a jury of any particular composition because the fair cross-section requirement does not impose a requirement that the jury actually chosen mirror the community or reflect the various distinctive groups in the population." *State v. Hester*, 324 S.W.3d 1, 39 (Tenn. 2010) (citing *Taylor*, 419 U.S. at 538). As the State points out, Petitioner's own proof undermines his argument. The census data that Petitioner provided established that 2.3% of Sullivan County residents in 2010 were black. Other proof showed that 4 out of 127, or 3.15%, of the jury venire in Petitioner's case were black. We agree with the post-conviction court that "[t]hese

numbers certainly do not demonstrate a systematic exclusion of jurors as alleged" because a greater percentage of blacks comprised Petitioner's venire than Sullivan County at large. The record does not preponderate against the post-conviction court's findings that Petitioner did not establish deficiency or prejudice, and relief is not warranted.

Petitioner also faults appellate counsel for failing to challenge the State's use of peremptory challenges on appeal because the State used all seven of its peremptory strikes on women. Petitioner does not explain how such an argument would have succeeded. The post-conviction court found that Petitioner carried his burden on neither prong of ineffective assistance here, and the record supports that finding. Petitioner is not entitled to relief.

### E. Failure to Secure Expert to Challenge Physical and Forensic Evidence

Petitioner claims that trial counsel were ineffective for failing to secure an expert to challenge the physical and forensic evidence in this case. Dr. Miller testified at the post-conviction evidentiary hearing that she would have been available at the time of trial and would have testified had trial counsel contacted her and requested her services. As described above, she was highly critical of the law enforcement investigation in this case. She testified as to inquiries she would have suggested trial counsel make on cross-examination regarding law enforcement's findings on the fingerprint evidence, gunshot residue, and firearm testing.

Lead counsel testified that he did not pursue issues like gunshot residue, fingerprints, and crime reconstruction because there were multiple eyewitness accounts that Petitioner shot Officer Vance. Had counsel pursued these identity issues, he believed that he would have lost credibility with the jury. This strategic decision, backed by sufficient professional judgment, does not come close to deficient performance. *See Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."). The post-conviction court found that Petitioner did not establish deficiency or prejudice, and the record does not preponderate against these findings. Petitioner is not entitled to relief on this issue.

### F. Failure to Suppress Statements

Petitioner asserts that trial counsel were deficient for failing to suppress his statements to the police and statements he made while in the police cruiser. He concedes that trial counsel filed a motion to suppress his statements and a hearing was held on said

motion.  He now argues that trial counsel were deficient for failing to advance certain arguments or "adequately" rebut the State's arguments.  To demonstrate prejudice on an ineffective assistance claim stemming from a suppression issue, "a petitioner is required to prove that he has a meritorious Fourth Amendment claim and that there is a reasonable probability the outcome of the proceedings would have been different had the evidence complained of been excluded."  *Phillips v. State*, 647 S.W.3d 389, 403 (Tenn. 2022) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)).

Trial counsel filed a motion to suppress Petitioner's statements to the police on the grounds that they were "made involuntarily," "elicited from [Petitioner] by interrogation" in violation of *Miranda*, and were "the product of coercion."  The State argued that the Petitioner's statements that he "shot the f[***]er.  I shot the cop.  He's dead," were admissible under the public safety exception and that Petitioner's statements recorded on the police cruiser video were voluntary and therefore also admissible.  The trial court denied the motion after a hearing.  That the motion was unsuccessful does not, standing alone, establish deficiency.  *Felts*, 354 S.W.3d at 277.

It is unnecessary for us to consider the merits of such a suppression motion (and therefore whether trial counsel performed deficiently) because the record does not preponderate against the post-conviction court's finding that Petitioner did not establish prejudice on this claim—he has not shown that the proceeding would have come out differently had his statements to the police and the cruiser video been excluded.  Indeed, this Court noted on direct appeal that "even if we were to conclude that the trial court erred in admitting the videotape into evidence, any such error would have been harmless given the strength of the testimony from other witnesses regarding [Petitioner's] statements of intent immediately prior to the shooting."  *Johnson*, 2012 WL 690218, at *34.  The same applies to Petitioner's statements to the police on the front porch.  We have no doubt that the outcome of Petitioner's trial would have been identical had the statements of which he now complains been suppressed.  Petitioner is not entitled to relief on this issue.

### *G. Failure to Investigate, Develop, and Raise Diminished Capacity*

Petitioner contends that trial counsel were ineffective for their failure to "investigate, develop, and present evidence of [his] diminished capacity."  He concedes that counsel hired Dr. Bernet to evaluate Petitioner's "mental condition for a number of issues, including his mental state at the time of the offense, specifically diminished capacity."  So, any argument that counsel did not adequately investigate diminished capacity is without merit.

A diminished capacity claim involves "a defendant's presentation of expert, psychiatric evidence aimed at negating the requisite culpable mental state."  *State v. Hall*,

958 S.W.2d 679, 688 (Tenn. 1997). The line of diminished capacity cases in our jurisprudence "clearly establish that expert testimony on the issue of diminished capacity is admissible only when it demonstrates that the defendant 'lacked the capacity' to form the requisite mens rea for the charged offense." *State v. Burlison*, No. M2019-00148-CCA-R9-CD, 2019 WL 6650578, at *3 (Tenn. Crim. App. Dec. 6, 2019), *no perm. app. filed*.

Dr. Bernet's report stated that Petitioner's mental condition "reduced his ability to engage in reflection and judgment prior to engaging in the alleged offense." Dr. Bernet could not pinpoint "precisely the degree of impairment" from which Petitioner suffered and did not say that Petitioner was incapable of forming premeditation. As the State points out, counsel's investigation yielded no admissible results because of Dr. Bernet's weak conclusion. Additionally, some portions of Petitioner's mental health records were prejudicial towards him, so counsel had a sound strategic reason to forgo presenting proof of Petitioner's mental health during the guilt phase of trial: they would have been discoverable to the State. Petitioner grasps at the mental health testimony adduced at the post-conviction hearing to discredit this strategy, but we remind Petitioner that we evaluate trial counsel's decision at the time it was made, not in hindsight. Trial counsel conducted a thorough investigation that yielded no finding to support diminished capacity. The record does not preponderate against the post-conviction court's finding that Petitioner did not establish prejudice. Petitioner is not entitled to relief on this issue.

Petitioner relatedly argues that trial counsel were deficient for failing to provide their experts with necessary information to make a diminished capacity finding. He raises this argument for the first time in his reply brief. "Issues raised for the first time in a reply brief are waived." *Hughes v. Tenn. Bd. of Prob. and Parole*, 514 S.W.3d 707, 724 (Tenn. 2017). Petitioner is not entitled to relief.

### H. Failure to Investigate, Develop, and Raise Incompetency

Petitioner argues that trial counsel were ineffective for failing to investigate, develop, and present evidence of Petitioner's incompetency during the penalty phase of trial. The record here shows that trial counsel believed that Petitioner dealt with mental health issues. To that end, counsel had Petitioner's competency evaluated before trial, viewed Petitioner's prior mental health reports, and obtained reports from the State's experts. None of these inquiries found Petitioner incompetent. Upon this investigation, counsel realized this was a fruitless enterprise. Counsel further testified at the post-conviction hearing that Petitioner was engaged with them and they were engaged with Petitioner during jury selection and trial. Once Petitioner sought to waive mitigation proof, trial counsel raised their concerns to the trial court and asked the court to have Petitioner examined to determine his competency. Petitioner refused to cooperate with the examiners.

- 20 -

Petitioner now complains under this issue that trial counsel failed to build a trusting relationship with him and his family, which led to his decision to "unknowingly sabotage" his case by waiving mental health mitigation evidence. The United States Supreme Court has held that the right to counsel does not encompass "the right to a meaningful attorney-client relationship." *Morris v. Slappy*, 461 U.S. 1, 13 (1983). The post-conviction court found that any fracture in the relationship between Petitioner and trial counsel was not counsel's fault. Counsel were "candid with Petitioner" about the evidence against him, their predicted outcome of the guilt phase of trial, and their planned strategy for mitigation during the penalty phase. When Petitioner brought issues to counsel's attention, they researched the issues and presented it to him. Trial counsel tried to include Petitioner's family in their investigation. Counsel's candor with him and his family notwithstanding, they chose to "h[o]ld things back from counsel." The record does not preponderate against the post-conviction court's findings on this issue. Petitioner has not established that trial counsel were deficient where he and his family were unwilling to cooperate with counsel through no fault of counsel.

Petitioner also argues that trial counsel were ineffective for failing to "conduct a continuing inquiry into his competency." But counsel did just that. As described above, trial counsel's previous inquiries into his competency did not yield any helpful results. Trial counsel did not have any concerns about Petitioner's competency during jury selection and the guilt phase of trial. When Petitioner sought to waive mental health evidence, which raised competency concerns to lead and co-counsel, they sought to have him evaluated again and argued that he was incompetent. The record supports the post-conviction court's finding that counsel were not deficient in this regard.

Petitioner next asserts that trial counsel were ineffective because they did not subject the competency hearing to meaningful adversarial testing. The record shows that trial counsel attempted unsuccessfully to argue that Petitioner was per se incompetent because he sought to waive mental health mitigation proof. They admitted, however, that they had "no expert proof that [they could] tender to the [c]ourt that he's not competent to make that decision." In light of their prior investigation as discussed above, this statement was accurate. We decline to hold counsel deficient because their investigation did not yield proof to support their incompetency argument.

Petitioner also alleges that counsel did not argue that counsel, not Petitioner, should control strategic decisions concerning presentation of evidence during the penalty phase of trial. Counsel, however, specifically argued this at trial and on direct appeal. This issue was decided contrary to their position. *Johnson*, 401 S.W.3d at 15-16. Trial counsel cannot be deficient where they raised the very issue Petitioner claims they should have. The record

does not preponderate against the post-conviction court's finding that Petitioner failed to show deficiency.

Petitioner claims that trial counsel were ineffective because they did not ensure that the trial court conducted a "proper competency evaluation." Again, the record undercuts this claim. Our supreme court held on direct appeal that the trial court's evaluation of Petitioner's competency "complied with both the letter and spirit of the *Zagorski*[ *v. State*, 983 S.W.2d 654 (Tenn. 1998)] inquiry." *Johnson*, 401 S.W.3d at 16.

To the extent that Petitioner argues that trial counsel were ineffective for failing to provide their experts with necessary information to establish incompetency, we conclude that this issue is waived because it is raised for the first time in his reply brief. *See Hughes*, 514 S.W.3d at 724.

All told, the record belies Petitioner's claim that trial counsel did not investigate, develop, and raise incompetency. The record does not preponderate against any of the post-conviction court's findings on these issues as to deficiency or prejudice, and Petitioner is not entitled to relief on this claim.

### J. Failure to Investigate, Develop, and Present Mitigating Evidence at Penalty Phase

Petitioner argues that trial counsel were ineffective for failing to investigate, develop, and present mitigating evidence during the penalty phase of trial. Petitioner claims that "mental health experts are critical to capital defense" and cites several cases where counsel have been held ineffective for failing to present such evidence. To the extent that Petitioner argues that counsel were ineffective for failing to investigate, develop, and present mental health mitigation evidence, counsel could not be deficient in this regard because Petitioner competently waived presentation of such evidence. *See Johnson*, 401 S.W.3d at 13-20.

Petitioner next argues that trial counsel were ineffective for failing to develop and present mitigating evidence of Petitioner's "traumatic life history." He cites *Wiggins v. Smith*, 539 U.S. 510 (2003), drawing a comparison between trial counsel's performance here and in *Wiggins*. In *Wiggins*, his attorneys obtained a report in which he described his personal history as "disgusting" and detailed his "misery as a youth": Wiggins had moved around in the foster care system, his mother was an alcoholic, he had once been left alone without food for days, and he was repeatedly raped. *Id.* at 523, 525, 535. Armed with this knowledge and with funding for a more detailed social history report, Wiggins' trial counsel did not investigate further. *Id.* at 524. This, held the United States Supreme Court, was deficient because his counsel "abandoned their investigation . . . after having acquired only rudimentary knowledge of his history." *Id.*

The record here shows that counsel thoroughly investigated Petitioner's social and family histories. The post-conviction court found that "various records establish Petitioner and his family were not forthcoming with information to the defense team and did not fully cooperate," (footnote omitted), and the record supports that finding. Trial counsel and their investigator spoke to several of Petitioner's family and friends, and even obtained some family history from his mother. The information that the interviewees provided, however, was primarily about Petitioner's character, not a traumatic upbringing. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." *Strickland*, 466 U.S. at 691. What is more, Petitioner explicitly stated when he waived mental health mitigation proof that he believed counsel wanted to "make [his] family look bad" and that he was "not going to allow that." Additionally, Petitioner did not ask trial counsel at the post-conviction hearing about their strategy surrounding Petitioner's life history. The evidence does not preponderate against the post-conviction court's finding that trial counsel were not deficient in this respect. Petitioner's claim falls flat.

Petitioner also argues that trial counsel should have argued his waiver of mitigation evidence "applied only to the presentation of expert witnesses." Petitioner's statements to the trial court during the penalty phase undercut this claim. Petitioner told the trial court, "I don't want no doctors." He also said he believed counsel wanted "to make everybody in my family look bad, look crazy, like they're planning on doing, I'm not going to allow that." He specifically told the trial court, "I want character witnesses so we can go on with mitigation. . . . I do not want mental health." Trial counsel, the trial court, this Court, and our supreme court interpreted Petitioner's statements as a "directive to offer only non-mental health mitigation evidence." *Johnson*, 401 S.W.3d at 12. The record supports the post-conviction court's conclusion that Petitioner established neither deficiency nor prejudice as to this claim and he is not entitled to relief.

### K. Failure to Challenge Prior-Crime-of-Violence Aggravating Factor

Petitioner argues that trial counsel were ineffective for failing to challenge the State's use of Petitioner's "malicious wounding" conviction from Virginia to establish the prior-crime-of-violence aggravating factor. Petitioner first argues that trial counsel were ineffective because, he alleges, the guilty plea transcript from Petitioner's malicious wounding conviction reveals that Petitioner's conviction is the result of an *Alford* or best interest plea. *See North Carolina v. Alford*, 400 U.S. 25, 37 (1970) (allowing criminal defendants to enter a guilty plea in which they agree to be convicted and sentenced to the charged offense but not to admit guilt). Petitioner argues it was improper for the State to

rely on a conviction in which he did not admit guilt to establish the prior-crime-of-violence aggravating factor, and therefore ineffective for trial counsel not to have challenged it. The State argues that no authority establishes that a conviction based on a no-contest plea cannot be used to establish the prior-crime-of-violence aggravator.

We believe the State's position is well-taken. Even assuming that Petitioner entered an *Alford* plea to malicious wounding in Virginia, Tennessee Code Annotated section 39-13-204(i)(2), the prior-crime-of-violence aggravator, requires the State to establish beyond a reasonable doubt that the defendant "was previously *convicted* of one (1) or more felonies, other than the present charge, whose statutory elements involve the use of violence to the person." (emphasis added). As the State points out, that was proven here, so trial counsel's decision not to challenge it on this ground did not fall below an objective standard of reasonableness; nor has Petitioner shown that such a challenge would have succeeded.

Petitioner next argues that counsel should have challenged the use of the malicious wounding conviction because "[Petitioner's] mental age and functional capacity were significantly lower than that of a typical 18-year-old." Petitioner clings to *Roper v. Simmons*, 543 U.S. 551 (2005) and *Atkins v. Virginia*, 536 U.S. 204 (2002) for support, but those cases do not provide the handhold he argues. Those cases stand only for the propositions that states cannot execute minors or the intellectually disabled. Petitioner was a minor neither at the time he committed the malicious wounding or shot Officer Vance. Nor is he intellectually disabled. *See Pike v. State*, No. E2009-00016-CCA-R3-PD, 2011 WL 1544207, at *68 (Tenn. Crim. App. Apr. 25, 2011) (drawing a distinction between mental illness and intellectual disability), *perm. app. denied* (Tenn. Nov. 15, 2011).

The record supports the post-conviction court's finding that trial counsel performed reasonably with respect to challenging the prior-crime-of-violence aggravator. Petitioner is not entitled to relief.

*L. Failure to Challenge Unconstitutional Jury Instructions*

Petitioner claims that trial counsel were ineffective for failing to object to the jury instructions in several respects. He first challenges the "number and order of the guilt phase forms provided to the jury." The State argues that this issue is waived because Petitioner has not included the allegedly improper verdict forms in the record on appeal. We agree. The appellant bears the burden of preparing a record that represents a fair, accurate, and complete account of what occurred in the trial court with respect to the issues he argues on appeal. Tenn. R. App. P. 24(b); *Thompson v. State*, 958 S.W.2d 156, 172 (Tenn. Crim. App. 1997). Failure to do so results in waiver of the issue on appeal. *State v. Matthews*, 805 S.W.2d 776, 784 (Tenn. Crim. App. 1990).

Petitioner next takes issue with the "moral certainty" instruction and the language stating that reasonable doubt "does not mean a doubt that may arise from possibility." Our supreme court has rejected such challenges to these instructions. *Carter v. State*, 958 S.W.2d 620, 625-26 (Tenn. 1997) (rejecting challenge to "moral certainty" instruction); *State v. Rimmer*, 250 S.W.3d 12, 29-31 (Tenn. 2008) (rejecting challenge to "possibility" portion of reasonable doubt instruction).

Petitioner also complains that counsel were ineffective for failing to object to the "confusing nature of the sentencing instructions that misled the jury into believing that unanimity was required for a sentencing decision." Petitioner cites *McCoy v. North Carolina*, 494 U.S. 133 (1990), in which the United States Supreme Court held that jurors must be allowed to independently consider and find any mitigating factors. The trial court's instruction here was consistent with *McCoy*. The trial court instructed the jury that there was "no requirement of . . . unanimous jury opinion as to any particular mitigating circumstances or that you agree to the same mitigating circumstance." Any objection would have failed because the trial court's instruction was proper.

Petitioner takes issue with the penalty verdict form's language "implying that death is appropriate when an aggravating circumstance outweighs a mitigating circumstance, regardless of whether it outweighs another mitigating circumstance or the mitigating circumstances as a whole[.]" Our review shows that the form about which Petitioner complains does not state what he alleges and is consistent with Tennessee Code Annotated section 39-13-204(g).

The record does not preponderate against the post-conviction court's finding that Petitioner demonstrated no prejudice where the instructions of which he complains have been consistently approved by our appellate courts. Petitioner is not entitled to relief on this claim.

### M. Failure to Voir Dire State's Experts' Qualifications

Petitioner complains that trial counsel were ineffective for failing to voir dire the State's experts' qualifications more rigorously during trial, leaving the jury "to infer that the State's experts where [sic] wholly credible from the outset." Petitioner neither presented these experts at the post-conviction hearing, questioned trial counsel about these experts, put forth any questions that should have been asked, nor explained how the State's experts would have been disqualified from testifying with a more contentious voir dire. As the State points out, it seems that Petitioner offers us an invitation to speculate on these matters—an invitation we decline. *Black*, 794 S.W.2d at 757. Petitioner is not entitled to relief on this issue.

### N. Failure to Object to Prosecutor's "Confession" Argument

Petitioner claims that trial counsel were ineffective for failing to object to the prosecutor's argument during closing characterizing Petitioner's statements as a confession. The State argues that trial counsel were not ineffective because the objection would have failed.

The decision of whether to object is a strategic matter. *Whitehair v. State*, No. M2019-00517-CCA-R3-PC, 2020 WL 916061, at *19 (Tenn. Crim. App. Feb. 26, 2020), *perm. app. denied* (Tenn. Jul. 17, 2020). The record shows that the trial court agreed during the jury charge conference to instruct the jury on "admissions against interest" rather than "confession" based on its belief that instructing on "confession" would confuse the jury. Contrary to Petitioner's assertion, this did not prevent the State from arguing its interpretation of the evidence that Petitioner confessed and the State did not mischaracterize the evidence by doing so. In any event, the Petitioner stated, "I shot the f[***]er. I shot the cop. He's dead." The State's argument was appropriate, so any objection would have failed. The record does not preponderate against the post-conviction court's findings that Petitioner carried his burden on neither deficiency nor prejudice. Petitioner is not entitled to relief on this issue.

### O. Failure to Challenge State's Proof at Sentencing and "Educate the Jury"

Petitioner argues that trial counsel were ineffective for "failing to appropriately challenge the State's proof at sentencing through argument and failing to educate the jury about the essential components of the sentencing decision." Petitioner first faults trial counsel, without citing to any authority, for failing to argue that other statutory death-qualifying circumstances that were inapplicable in Petitioner's case were worse in comparison to murdering a police officer engaged in the performance of his official duties. Trial counsel, however, attempted to make precisely such an argument, and the trial court denied his motion. Petitioner nevertheless argues that "counsel could still have made the argument without mention of other aggravating circumstances." He makes no attempt to explain how counsel could have done so and did not ask counsel about this at the post-conviction evidentiary hearing. He also faults counsel for failing to appeal the trial court's denial of their motion, again, without citing to any authority or explaining how this issue would have succeeded on appeal. The post-conviction court found that Petitioner did not carry his burden as to deficiency or prejudice, and the evidence does not preponderate against these findings. Petitioner is not entitled to relief on this issue.

Next, Petitioner asserts that trial counsel were ineffective for failing to object to the prosecutor's argument that Petitioner did not show remorse. The post-conviction court

found that trial counsel objected to the prosecutor's argument, moved for a mistrial, and moved for two special jury instructions, all of which were unsuccessful. Additionally, Petitioner did not ask counsel about this issue. The post-conviction court therefore found that Petitioner did not establish deficiency or prejudice. The record supports its findings.

Petitioner argues that counsel were ineffective for failing to object to the prosecutor's argument that the jury should not show mercy to Petitioner because he showed no mercy to Officer Vance. The record shows that lead counsel challenged the State's argument on this point in his closing argument during sentencing. At the post-conviction hearing, Petitioner did not ask lead counsel about his decision to challenge the State's argument on this point through his own argument rather than by objection, so the record does not preponderate against the post-conviction court's finding that Petitioner did not show deficiency. Relief is not warranted.

Petitioner next contends that trial counsel were ineffective for failing to object to the prosecutor's argument that "the jury should consider the community's need to impose death as a way to serve and protect Officer Vance." The State mentioned several times in its closing argument during sentencing that Officer Vance served and protected his community as a police officer. This was a permissible argument because one of the State's death-qualifying factors was that Petitioner murdered a law enforcement officer who was engaged in the performance of his official duties and Petitioner knew that he was a law enforcement officer engaged in the performance of his official duties. *See* T.C.A. § 39-13-204(i)(9). The State had to prove this factor beyond a reasonable doubt, so it was entitled to argue how the law applied to the facts here. We disagree that the prosecutor's argument was a "thinly veiled appeal to vengeance." *See State v. Bigbee*, 885 S.W.2d 797, 812 (Tenn. 1994). The record does not preponderate against the post-conviction court's finding that counsel were not deficient in this regard. Petitioner is not entitled to relief on this issue.

### P. Failure to Object to Lack of Aggravating Factors in Indictment

Petitioner argues that trial counsel were ineffective for failing to argue that his rights were violated because the aggravating factors the State relied on at sentencing were neither in the indictment nor returned by the grand jury. Our supreme court has "consistently rejected the argument that aggravating circumstances must be pled in the indictment." *State v. Berry*, 141 S.W.3d 549, 558 (Tenn. 2004). Despite Petitioner's assertion that "[t]he law in this area is still changing," this Court recently reiterated that "the aggravating circumstances need not be pled in the indictment, and the grand jury review is not constitutionally required for death notices." *Dotson v. State*, No. W2019-01059-CCA-R3-PD, 2022 WL 860414, at *72 (Tenn. Crim. App. Mar. 23, 2022), *aff'd on other grounds*, 673 S.W.3d 204 (Tenn. 2023). The record supports the post-conviction court's finding that

Petitioner could not establish prejudice because this claim has been rejected. Petitioner is not entitled to relief on this ground.

## Q. Failure to Present Evidence of Racial Stereotypes and Implicit Bias at Sentencing

Petitioner contends that trial counsel were deficient for failing to present evidence of racial stereotypes and implicit bias during sentencing. Petitioner did not question counsel on this matter at the post-conviction evidentiary hearing. "Without counsel's testimony on this issue, we would be forced to speculate about the reasoning behind his decision and whether any prejudice resulted from his actions." *State v. Wagner*, No. E2012-01144-CCA-R3-CD, 2014 WL 60971, at \*13 (Tenn. Crim. App. Jan. 8, 2014), *perm. app. denied* (Tenn. Sept. 18, 2014). What is more, Professor Levinson could not identify any specific juror who was biased against Petitioner, only offering a nebulous speculation that "a reasonable likelihood exists that bias affected at least one juror's decision-making in the guilt or sentencing phases." The post-conviction court concluded that Petitioner established neither deficiency nor prejudice on this claim. We agree. Petitioner is not entitled to relief on this issue.

## R. Failure to Object to "Paucity of Resources"

Petitioner claims that trial and appellate counsel were ineffective for failing to object to the "paucity of resources" available to capital defendants in the form of compensation of experts, caps on fees and expenses for experts, and geographic limitations for experts. However, he neither questioned counsel about this topic at the post-conviction hearing nor presented proof in any other form. Nor has he argued that his trial was unfair because of inadequate defense resources. So, as the post-conviction court found, he demonstrated neither deficiency nor prejudice on this issue. The record does not preponderate against this finding. Indeed, we have rejected this claim in the past. *See Jahi v. State*, No. W2011-02669-CCA-R3-PD, 2014 WL 1004502, at \*131 (Tenn. Crim. App. Mar. 13, 2014), *perm. app. denied* (Tenn. Sept. 18, 2014); *Robinson v. State*, No. W2011-00967-CCA-R3-PD, 2013 WL 1149761, at \*98 (Tenn. Crim. App. Mar. 20, 2013), *perm. app. denied* (Tenn. Aug. 14, 2013). Petitioner is not entitled to relief on this issue.

## S. Failure to Argue Economic Cost of Death Penalty

Petitioner argues that trial counsel were ineffective for failing to argue the economic cost of the death penalty during the penalty phase of trial. The State argues that trial counsel were not ineffective. Petitioner concedes, as he must, that our supreme court rejected this argument in *Davidson v. State*, 509 S.W.3d 156, 244 (Tenn. 2016) (appendix). In any event, Petitioner presented no proof at the post-conviction hearing that non-capital sentences are lower-cost. We agree with the post-conviction court that Petitioner did not

establish prejudice where the evidence of which he complains was not relevant. *See id.* ("Evidence of the expense associated with implementing the death penalty [bears] no relation to the defendant or his crimes, and as such, it [is] irrelevant."). Petitioner is not entitled to relief on this claim.

### T. Failure to Argue that Death Penalty is Unconstitutional

Petitioner contends that trial and appellate counsel were ineffective for failing to challenge the death penalty's constitutionality. First, he argues they were ineffective because the death penalty is "unreliable, arbitrary, and unusual or rare." Second, he argues that the death penalty "impinges on the fundamental right to life and the prohibition against cruel and unusual punishment." These claims have been weighed in the balances and found wanting. *See State v. Freeland*, 451 S.W.3d 791, 826 (Tenn. 2014) (rejecting the argument that the death penalty is unconstitutional because it is imposed arbitrarily) (appendix); *State v. Howell*, 868 S.W.2d 238, 258 (Tenn. 1993) (rejecting the argument that the death penalty is cruel and unusual punishment); *State v. Sexton*, 368 S.W.3d 371, 427 (Tenn. 2012) (rejecting the claim that a death sentence violates the "fundamental right to life"). The record supports the post-conviction court's finding that Petitioner did not establish prejudice. Petitioner is not entitled to relief on this issue.

### U. Failure to Argue that Death Penalty Violates International Law

Petitioner argues that trial counsel were ineffective for failing to argue that the death penalty violates international law. Our supreme court has held that "[t]he authorities appear to be universal that no customary or international law or international treaty prohibits a state from imposing the death penalty as punishment for certain crimes." *State v. Odom*, 137 S.W.3d 572, 599 (Tenn. 2004) (appendix). Such an argument would have been meritless, and the record does not preponderate against the post-conviction court's finding that Petitioner failed to show prejudice. Petitioner is not entitled to relief on this issue.

### V. Failure to Challenge Improper Verdict Form on Appeal

Petitioner argues that appellate counsel were ineffective for failing to challenge an allegedly improper penalty phase verdict form.[5] The State argues that this issue is waived because Petitioner has not included the allegedly improper verdict form in the record on appeal. We agree. Again, the appellant bears the burden of preparing a record that represents a fair, accurate, and complete account of what occurred in the trial court with

---

[5] The verdict form of which Petitioner complains at this juncture is different from the penalty phase verdict form discussed earlier in this opinion.

respect to the issues he argues on appeal. Tenn. R. App. P. 24(b); *Thompson*, 958 S.W.2d at 172. This failure results in waiver of this issue on appeal. *Matthews*, 805 S.W.2d at 784. Petitioner is not entitled to relief on this issue.

### W. Failure to Argue for Petitioner's Children

Petitioner claims that trial counsel were ineffective for failing to present additional evidence that executing him would unfairly punish his children. Petitioner concedes that two witnesses testified at sentencing about his relationships with two of his sons. He also concedes that counsel told the jury during closing that the effect of Petitioner's execution on his children was a valid factor for them to consider in determining Petitioner's sentence. He alleges that trial counsel "possessed, but did not present, evidence that [B.M.] regularly visited [him] in the jail and wanted their children to have their father in their lives." Petitioner did not ask counsel about this at the post-conviction hearing, did not present B.M. to testify at the post-conviction hearing, and offered no evidence to substantiate this claim. The post-conviction court found that Petitioner established neither deficiency nor prejudice, and the record supports its finding. Petitioner is not entitled to relief on this issue.

## II. Standalone Constitutional Claims

### A. Shock Belt

Petitioner raises as a standalone claim that the trial court violated his constitutional rights by forcing him to wear a shock belt during his trial. The State argues that this claim is previously determined because Petitioner had a full and fair hearing on the matter, or alternatively, that it is waived because it could have been raised on direct appeal. We agree that this claim is previously determined because Petitioner had a full and fair hearing. *See* T.C.A. § 40-30-106(h).

### B. Prosecutorial Misconduct in Post-Conviction Proceedings

Petitioner argues that prosecutorial misconduct deprived him of due process in the post-conviction context. First, he alleges that the State intimidated jurors by contacting them via letter in anticipation of the post-conviction proceedings. The State informed the jurors in the letter that counsel for Petitioner or an investigator might contact them. The letter explicitly told the jurors that "[w]hether or not you talk to the attorneys or investigators or other representatives from [the Office of the Post-Conviction Defender] is solely your decision." The letter also asked the jurors to inform the District Attorney

General for Sullivan County if anyone contacted them on Petitioner's behalf. Contrary to Petitioner's assertions, nothing about this letter on its face was intimidating or suggested that the jurors should not speak with Petitioner's representatives.

Petitioner's reliance on *Webb v. Texas*, 409 U.S. 95 (1972) is unavailing. The United States Supreme Court in *Webb* held that a trial judge deprived the defendant of due process where he so sternly admonished a defense witness about the dangers of perjury that he implied that he expected the witness to lie. 409 U.S. at 97. The Court stated that the judge's comments "could well have exerted such duress on the witness' mind as to preclude him from making a free and voluntary choice whether or not to testify." *Id.* at 98. The State's letter here did not exert any kind of "duress" on the jurors and, far from "preclud[ing] them] from making a free and voluntary choice" as to whether they would speak with Petitioner's representatives, explicitly and accurately told the jurors it was their individual choice whether they spoke with his representatives. The post-conviction court found that Petitioner had not carried his burden to establish misconduct, and the record supports that finding. The State did not violate Petitioner's due process rights and he is not entitled to relief on this basis.

Petitioner also seems to raise a standalone prosecutorial misconduct claim that the State improperly subpoenaed Petitioner's educational records before trial. The post-conviction court found this claim waived because he could have raised the claim on direct appeal. We agree. Petitioner is not entitled to relief.

### C.   *Vague Aggravating Circumstance*

Petitioner argues that his death sentence is unconstitutional because the prior-crime-of-violence aggravating factor is unconstitutionally vague. The State argues that this claim is waived because it could have been raised on direct appeal, and alternatively that the aggravating factor is not unconstitutionally vague. We agree with the State that this claim is waived. *See* T.C.A. § 40-30-106(g) (A claim is waived if the petitioner "failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented."). In any event, we have repeatedly held that this aggravating factor is not unconstitutionally vague. *See Nichols v. State*, No. E2018-00626-CCA-R3-PD, 2019 WL 5079357, at *6 (Tenn. Crim. App. Oct. 10, 2019), *perm. app. denied* (Tenn. Jan. 15, 2020); *Sutton v. State*, No. E2018-00877-CCA-R3-PD, 2020 WL 525169, at *7 (Tenn. Crim. App. Jan. 31, 2019), *perm. app. denied* (Tenn. Feb. 13, 2020); *King v. State*, No. E2019-00349-CCA-R3-PD, 2021 WL 982503, at *7 (Tenn. Crim. App. Mar. 16, 2021), *perm. app. denied* (Tenn. July 12, 2021). Petitioner is not entitled to relief on this ground.

## D. Factual Findings by Courts

Petitioner argues, relying on *Hurst v. Florida*, 577 U.S. 92, 102-03 (2016), that the trial court's thirteenth-juror ruling and its finding that Petitioner's malicious wounding conviction was a violent felony were "factual findings" by the court in violation of constitutional principles. The State argues that this claim is waived for failure to raise it on direct appeal and alternatively that "*Hurst* offers no relief." We agree with the State that this claim is waived. *See* T.C.A. § 40-30-106(g). And we have previously rejected similar claims because juries, not judges, determine whether aggravating factors apply. *See State v. Dellinger*, 79 S.W.3d 458, 466-67 (Tenn. 2002); *Dotson*, 2022 WL 860414, at *71. Petitioner is not entitled to relief on this issue.

## E. Structural Error

Petitioner argues that his trial was tainted by structural error in several respects. In support of his claims, he offered affidavits from five jurors, which were the subject of much argument in the post-conviction proceedings. The post-conviction court redacted the affidavits in compliance with Tennessee Rule of Evidence 606(b). The State argues that Petitioner has waived these claims by failing to raise them at trial or on direct appeal.

Petitioner's first allegation of structural error is that jurors considered the Bible in their sentencing deliberation. We agree with the State that this claim is waived because it could have been presented on direct appeal. *See* T.C.A. § 40-30-106(g). Petitioner is not entitled to relief on this issue.

Next, Petitioner argues that the jury deliberated prematurely. Even setting aside the State's waiver argument, "post-verdict inquiries into whether a jury has prematurely deliberated are barred because premature deliberations do not involve extraneous prejudicial information or outside influence." *State v. Leath*, 461 S.W.3d 73, 110 (Tenn. Crim. App. 2013) (citing *State v. Frazier*, 683 S.W.2d 346, 353 (Tenn. Crim. App. 1984)). Petitioner is not entitled to relief on this issue.

Petitioner also summarily claims that the trial court failed to maintain accurate records of the proceedings. The post-conviction court found that this claim was waived because it could have previously been raised, and alternatively, Petitioner offered no proof on this claim and therefore did not carry his burden of proof. We agree that this claim is waived, and Petitioner is not entitled to relief thereon.

## F. Proportionality Review

Petitioner contends that Tennessee's proportionality review is flawed because our supreme court "unconstitutionally discriminated against him based on race" and did not consider mental health evidence that was not presented during the penalty phase of trial. The supreme court explicitly considered Petitioner's race during its proportionality review. *Johnson*, 401 S.W.3d at 26. And Petitioner has only himself to blame that the jury did not hear mental health mitigation evidence. Further, our supreme court has upheld its proportionality methodology. *See State v. Clayton*, 535 S.W.3d 829, 852 (Tenn. 2017). Petitioner is not entitled to relief on this issue.

### G. *Constitutionality of Death Penalty*

Petitioner urges that the death penalty is unconstitutional on its face and as applied to Petitioner. Petitioner's standalone claim that the death penalty is unconstitutional as applied to him is previously determined because it was necessarily decided on direct appeal as part of our supreme court's proportionality review. *See Johnson*, 401 S.W.3d at 53-55. Petitioner's claim that the death penalty is facially unconstitutional has been consistently rejected by our courts, as described above. *See supra* § I.(T). Petitioner is not entitled to relief.

### H. *Cumulative Error*

In addition to the above grounds, Petitioner maintains that he is entitled to relief due to the cumulative effect of the alleged errors. We conclude that prejudice did not result from any single deficiency by trial counsel or the cumulative effect thereof. We have found no single instance where Petitioner's constitutional right to a fair and impartial trial was otherwise violated. We therefore conclude that cumulative error relief is unwarranted.

### III. *Other Claims*

We have addressed each claim Petitioner raises in the "Issues Presented for Review" section of his appellate brief. "Neither the court nor the parties should have to guess about what issues an appellant advances for relief." *State v. Holmgren*, No. M2023-00795-CCA-R3-CD, 2024 WL 2891416 (Tenn. Crim. App. June 10, 2024) (citing *Hodge v. Craig*, 382 S.W.3d 325, 337 (Tenn. 2012)), *no perm. app. filed*. To the extent that Petitioner raises other claims, whether of ineffective assistance or standalone claims, they are waived for failing to distinctly raise them as issues. *See* Tenn. R. App. P. 27(a)(4); *Hodge*, 382 S.W.3d at 335.

**CONCLUSION**

After our review of the record, the applicable law, the parties' briefs, and oral arguments, we affirm the judgment of the post-conviction court in all respects. Petitioner has failed to establish any claim that he has raised by clear and convincing evidence.


_____
TIMOTHY L. EASTER, JUDGE